UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEP DE PAZ SALES,<br>　　　　Plaintiff,<br>　　v.<br>WILLIAM P. BARR, et al.,<br>　　　　Defendants. | Case No. 19-cv-07221-KAW<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>Re: Dkt. No. 2 |

On October 31, 2019, Petitioner Josep De Paz Sales filed a petition for a writ of habeas corpus. (Pet., Dkt. No. 1.) Since July 10, 2018, Petitioner has been detained at the Yuba County Jail pending removal proceedings under the Immigration and Nationality Act ("INA"). (Pet. ¶ 1.) Petitioner now moves for a temporary restraining order ("TRO Motion") requiring his immediate release. (Pet'r TRO Mot., Dkt. No. 2.)

Having considered the parties' filings, the relevant legal authority, and the arguments made at the December 4, 2019 hearing, the Court DENIES Petitioner's motion for a temporary restraining order but ORDERS that Petitioner be given another bond hearing consistent with this order by **February 7, 2020**.

## I. BACKGROUND

This is the second petition for a writ of habeas corpus that Petitioner has filed, the first having been resolved when the Court ordered the Government to provide Petitioner with another bond hearing. (*See* Case No. 19-cv-4148-KAW ("*De Paz Sales I*"), Dkt. No. 17 ("Ord.").) The Court therefore assumes familiarity with the facts, and focuses on facts specific to the instant petition.

Petitioner is a 21-year old man from Guatemala, who has resided in the United States since

he was six years old. (Pet. ¶ 18.) Petitioner has two criminal convictions. First, on October 23, 2017, Petitioner pled guilty to burglary (felony), for which he was sentenced to 180 days in jail, to be served on the weekends. (Pet. ¶ 24; Pet., Exh. B ("De Paz Sales Decl.") ¶¶ 9, 12.) Petitioner served less than six months before he was released. (De Paz Sales Decl. ¶ 12.) Second, on November 14, 2017, Petitioner was convicted of driving under the influence (misdemeanor). (De Paz Sales ¶ 13.) Petitioner was sentenced to two days in county jail and ordered to complete DUI classes. (De Paz Sales Decl. ¶ 13.) In addition to these two convictions, Petitioner has arrests for: (1) obstructing a public officer, (2) carrying a concealed firearm, (3) carrying a loaded firearm in public, (4) hit and run with property damage, (5) possession of a controlled substance, (6) transportation of mushrooms, (7) probation violation, and (8) battery with serious bodily injury. (*De Paz Sales I*, Dkt. No. 11-1 ("Gagelonia Decl.") ¶ 4.)

In July 2018, Petitioner was detained by the Department of Homeland Security. (Pet. ¶ 28.) On July 10, 2019, removal proceedings were initiated pursuant to the INA. (Pet. ¶ 28.)

On August 14, 2018, Petitioner received an initial bond hearing before IJ Park. (Pet. ¶ 29.) At the hearing, Petitioner testified about his personal and criminal history. (Pet. ¶ 29; De Paz Sales Decl. ¶ 14.) Testimony was also presented to show that Petitioner had only been arrested and accused of a DUI and burglary once. (Pet., Exh. A ("Gupta Decl." ¶ 6.); *see also* Dkt. No. 20 ("Aug. 14, 2018 Hearing").)[1] The IJ told Petitioner he was sincere, but that based on his past actions, Petitioner had not met his burden of showing he was not a danger to the community based on his criminal history.[2] (*See* Aug. 14, 2018 Hearing.) That same day, the IJ issued an order denying Petitioner bail on the ground that he was a danger to the community. (Pet., Exh. C.)

---

[1] Further, Petitioner submitted a declaration by Michael J. Wilson, an Assistant Public Defender with the Alameda County Public Defender's Office. (Pet., Exh. M ("Wilson Decl.").) Mr. Wilson states that he reviewed Petitioner's criminal record, using the Criminal Records Information System and ODYSSEY databases. (Wilson Decl. ¶ 3.) Based on his review, he found that Petitioner did not have any additional convictions or arrests for either DUI or burglary, other than the October 23, 2017 burglary conviction and November 14, 2017 DUI conviction. (Wilson Decl. ¶¶ 5-6.)

[2] Petitioner states that the IJ found dangerousness based solely on the DUI; it does not appear, however, from the hearing audio that the IJ based his dangerousness finding on the DUI conviction only. (*See* De Paz Sales Decl. ¶ 14.)

2

On October 1, 2018, IJ Park denied Petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and ordered Petitioner removed to Guatemala. (Pet. ¶ 31.) On appeal, the Board of Immigration Appeals ("BIA") remanded Petitioner's application for relief under the CAT because the IJ's decision did not have sufficient analysis or fact findings. (Pet. ¶ 32.) On April 8, 2019, IJ Park denied Petitioner's application for relief under the CAT. (Pet. ¶ 33.) Petitioner's appeal of the IJ's decision is currently pending before the Ninth Circuit. (Pet. ¶ 34.)

On May 17, 2019, Petitioner filed a motion for a new bond hearing based on changed circumstances. (Pet. ¶ 35.) In support of his motion, Petitioner submitted evidence of his rehabilitation efforts, sobriety, and education, as well as a reentry plan. (Pet. ¶ 36.) Petitioner also stated his willingness to be released with GPS monitoring. (Pet. ¶ 36.)

On May 21, 2019, IJ Park denied Petitioner's motion for a new bond hearing. (Pet. ¶ 37.) On June 5, 2019, the IJ issued a written order, finding that Petitioner had failed to demonstrate that he was not a danger to the community. (Pet., Exh. I.) The IJ reiterated Petitioner's DUI conviction, which resulted in Petitioner getting into a car accident, and noted Petitioner's arrest for residential burglary. (*Id.*) The IJ ultimately concluded that Petitioner had not met his burden due to Petitioner's "criminal history which evidenced that he committed multiple acts which were dangerous." (*Id.*) The IJ did not specifically identify Petitioner's prior arrests.

On July 18, 2019, Petitioner filed *De Paz Sales I*, which sought a new bond hearing or release from prolonged detention. (*De Paz Sales I*, Dkt. No. 1.) On September 30, 2019, the Court granted the petition for a writ of habeas corpus, ordering the Government to provide Petitioner with another bond hearing within twenty-one days. (*De Paz Sales I* Ord. at 13.) The Court required the Government to establish by clear and convincing evidence that Petitioner was a flight risk or a danger to the community to continue his detention. (*Id.*)

On October 11, 2019, IJ Park held a new bond hearing. (Pet. ¶ 39.) The Government's only new evidence was Petitioner's pending appeal before the Ninth Circuit. (Pet. ¶ 40; Gupta Decl. ¶ 16.) The Government also submitted a FBI Rap sheet of Petitioner's criminal history, which had previously been submitted as part of Petitioner's August 2018 bond hearing. (Pet. ¶

40.) The Government requested that the IJ incorporate the record of the August 2018 bond proceedings, including testimony regarding Petitioner's criminal history. (Pet. ¶ 42; Gupta Decl. ¶ 18.) The Government did not ask any new questions about Petitioner's criminal record. (Pet. ¶ 42; Gupta Decl. ¶ 18.)

At the hearing, Petitioner testified that if released, he would be able to live in his parents' house and would have immediate employment at the car wash where his father worked. (Pet. ¶ 48; Gupta Decl. ¶ 20.) Petitioner presented evidence of his educational and rehabilitation efforts, the assignment of a caseworker advocate from the Alameda County Public Defender's Office who would provide support in his rehabilitation efforts, acceptance to outpatient treatment with La Familia Counseling Services, tentative admission to the Secure Continuous Remote Alcohol Monitor ("SCRAM") program, and his community ties. (Pet. ¶¶ 43-46, 50-51.) At the end of the hearing, the IJ stated he was not prepared to make a final decision because he needed to review the audio recording of the original bond hearing. (Pet. ¶ 53.) The IJ stated it would take around three days to issue a written decision. (Pet. ¶ 53.)

On October 15, 2019, four days after the hearing, Petitioner reported to his attorney that he feared for his safety, as he had been receiving verbal threats from other inmates. (Gupta Decl. ¶ 29.) Around October 16, 2019, Petitioner was placed on suicide watch after inflicting deep cuts and injuries on himself. (Gupta Decl. ¶ 30.) On October 17, 2019, Petitioner confirmed to his counsel that he had made two attempts to end his life in the past five days. (Gupta Decl. ¶ 33.) Petitioner stated he was not receiving mental health counseling or medication, only treatment for his physical injuries. (Gupta Decl. ¶ 33.) Around October 21, 2019, Petitioner was moved to a medical unit where he is kept inside without any outside contact for nearly 23 hours a day. (Gupta Decl. ¶ 37.)[3]

On October 23, 2019, IJ Park denied Petitioner's request for release on bond, finding that the Government had demonstrated by clear and convincing evidence that Petitioner was a danger to the community. (Pet., Exh. C at 2.) Specifically, the IJ explained: "The Court maintains its

---

[3] As of the filing of this Petition, Petitioner was still in the special medical unit. (Gupta Decl. ¶ 39.) He receives medication for anxiety, but no mental health counseling. (Gupta Decl. ¶ 39.)

4

serious concerns about Respondent's extensive criminal history, which includes several burglaries and DUIs; battery with serious bodily injury; a hit and run; carrying a loaded firearm; and possession of a controlled substance." (*Id.*) The IJ further found that Petitioner's proposed post-release plan did not overcome the Government's showing that he was a danger to the community "given the seriousness of [Petitioner]'s criminal history . . . ." (*Id.*) The IJ, however, stated: "In the alternative, if DHS has failed to satisfy its burden of proof, the Court grants Respondent a bond set at $10,000, and DHS may place Respondent on any alternative to detention." (*Id.*) The IJ explained that the bond would mitigate any flight risk. (*Id.* at 2-3.)

On October 31, 2019, Petitioner filed the instant action and motion for a TRO.[4] On November 4, 2019, the Government filed its opposition to the motion for a TRO. (Gov.'s Opp'n, Dkt. No. 11.) On November 11, 2019, Petitioner filed his reply. (Pet.'s Reply, Dkt. No. 15.) Following the December 4, 2019 hearing, the parties filed supplemental briefs addressing how the FBI Rap sheet should be read. (Pet.'s Supp. Brief, Dkt. No. 21; Gov.'s Supp. Brief, Dkt. No. 22.)

## II. LEGAL STANDARD

### A. Temporary Restraining Order

Federal Rule of Civil Procedure 65(b) allows a court to issue a temporary restraining order to prevent "immediate and irreparable injury, loss, or damage . . . to the movant." The standard for issuing a temporary restraining order is "substantially identical" to that of a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, as the moving party, Petitioner has the burden of establishing that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009) (internal quotation omitted). All four factors must be established for an injunction to issue. *Alliance for the Wild Rockies v.*

---

[4] The case was originally assigned to Judge Chhabria, who ordered the Government to file a response by November 4, 2019. (Dkt. No. 6.) Judge Chhabria also required the parties to state whether they would consent to the jurisdiction of the undersigned. (*Id.*) Both parties consented, and the case was reassigned to the undersigned. (Dkt. Nos. 10-12.)

*Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### B. Immigration and Nationality Act

The INA "authorizes the detention of aliens awaiting removal from the United States." *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018). 8 U.S.C. § 1226 "generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting 8 U.S.C. 1226(a).) Except as provided by § 1226(c), which carves out a category of aliens who may not be released under § 1226(a), "the Attorney General 'may release' an alien detained under § 1226(a) 'on bond or . . . conditional parole.'" *Id.* (quoting 8 U.S.C. § 1226(a)).

## III. DISCUSSION

### A. Exhaustion

As an initial matter, the Government argues that the Court should not review Petitioner's challenge to his detention because he has not exhausted his administrative remedies. (Gov.'s Opp'n at 12.) In *De Paz Sales I*, the Court found that waiver of the exhaustion requirement was warranted because Petitioner would suffer irreparable harm. (*De Paz Sales I* Ord. at 6-7.) Specifically, the Court found:

> Petitioner has been detained as of July 2018. Notably, his detention was prolonged in part due to the IJ's error in providing no reasoning in denying Petitioner relief under the CAT, requiring an appeal that lasted six months. Such an appeal – and the resulting six months of detention – could have otherwise been avoided, and was outside of Petitioner's control. To now require Petitioner to be detained several months more as the BIA decides his appeal would cause Petitioner irreparable harm of additional detention. [Additionally,] Petitioner continues to experience detrimental psychological and emotional effects due to his continued detention. These effects appear to stem directly from the conditions of Petitioner's civil detention, including being held indoors nearly twenty-four hours a day.

(*Id.* at 7.)

The same reasoning applies in this case. Additionally, Petitioner has been further delayed due to the IJ applying the wrong legal standard to his motion for a new bond hearing, requiring the

6

1 filing of *De Paz Sales I*. (*See De Paz Sales* Ord. at 12-13.)  Petitioner also continues to suffer significant psychological effects from his detention, including anxiety caused by the threats of other inmates and two suicide attempts.  Accordingly, Petitioner is excused from exhaustion.

**B.     Temporary Restraining Order Standard**

   **i.     Likelihood of Success on the Merits**

      a.     Judicial Review of the Immigration Judge's Decision

The Government argues that the Court cannot review the IJ's discretionary decision to grant or deny bond.  (Gov.'s Opp'n at 10-11.)  A district court's review is limited by 8 U.S.C. § 1226(e), which provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  This section, however, "does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges," or preclude "claims that the discretionary process itself was constitutionally flawed . . . ." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *see also Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

Courts in this district have thus reviewed IJ bond decisions based on a failure to comply with due process.  "[D]ue process requires the Government to show by clear and convincing evidence that an immigrant is a flight risk or a danger to the community at the time of the bond hearing." *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1029 (N.D. Cal. 2018).  In assessing dangerousness, "IJs may consider the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Obregon v. Sessions*, Case No. 17-cv-1463-WHO, 2017 WL 1407889, at *6 (N.D. Cal. Apr. 20, 2017) (internal quotation omitted).  Further, "establishing dangerousness by 'clear and convincing evidence' is a high burden and must be demonstrated in fact, not 'in theory.'" *Id.* at 7 (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)).

In *Ramos*, the district court "review[ed] the IJ's factual findings for clear error, and independently review[ed] the facts, findings, and record to determine, *de novo*, whether those facts clearly and convincingly demonstrate that [the petitioner] poses such a danger to the community

that she must remain detained, including because no alternative to detention could protect the community." 293 F. Supp. 3d at 1032-33. The district court explained that this was the standard of review applied by the Ninth Circuit when it "reviews a district court's application of the clear and convincing evidence standard in criminal bail cases." *Id.* at 1031. Such a standard requires some deference, "particularly on factual or credibility determinations, and on the application of the agency's own laws and regulations," while allowing the reviewing court to determine "whether the IJ meaningfully engaged with the record in making her findings, or instead ignored crucial evidence." *Id.* at 1032. The Court will apply the same standard here.[5]

### b. Clear Error

The Court finds that the IJ committed clear error in finding the facts, specifically when he found that Petitioner's criminal history "includes several burglaries and DUIs . . . ." (Pet., Exh. C at 2.) The evidence in the record shows that Petitioner had only been arrested and accused of a DUI and burglary once. Specifically, evidence in the form of direct testimony was presented at the August 18, 2018 bond hearing, and the IJ found that Petitioner's testimony was sincere. (Gupta Decl. ¶¶ 6-7; Aug. 18, 2018 Hearing.) Petitioner also presents other evidence that confirms he was only arrested once for either a DUI or burglary. (Wilson Decl. ¶¶ 5-6.) While the Government contends this other evidence may not have been presented at the October 11, 2019 bond hearing, it does not dispute that there was direct testimony at the August 18, 2018 hearing that Petitioner had only been arrested and accused of a DUI and burglary once each. Indeed, the Government concedes in its supplemental brief that the FBI Rap sheet does not demonstrate that Petitioner has multiple arrests for either a DUI or burglary. (Gov.'s Supp. Brief at 2; *see also*

---

[5] The Government cites *Slim v. Nielson* and *Calmo v. Sessions* in arguing that the Court cannot review the IJ's bond decision in this case. (Gov.'s Opp'n at 11.) Neither case stands for this proposition. In *Calmo*, the district court acknowledged that it could "not second-guess the immigration judge's weighing of the evidence," before applying the clear error standard to find that the IJ properly found that the petitioner posed a danger to the community. Case No. 17-cv-7124-WHA, 2018 WL 2938628, at *4 (N.D. Cal. June 12, 2018). In *Slim v. Nielson*, the district court found that the petitioner was only challenging the IJ's weighing of the evidence, rather than disputing the IJ's factual findings, the fairness of the bond hearing itself, or whether the government had actually established by clear and convincing evidence that continued detention was appropriate. Case No. 18-cv-2816-DMR, 2018 WL 4110551, at *5 (N.D. Cal. Aug. 29, 2018).

1  Gagelonia Decl. ¶¶ 7-9 (explaining how the FBI Rap sheet is read).)

2  Moreover, it is the Government's burden to show dangerousness, not Petitioner's. By finding that Petitioner's criminal history included "several burglaries and DUIs," when it did not, the IJ erred. Such an error is significant because "[w]hen an IJ's bond memorandum indicate[s] that he misunderstood some of the evidence presented . . . this mistake may have caused the IJ to overestimate the severity of [P]etitioner's past conduct, which demonstrates that the IJ may not have adequately considered all of the available evidence in assessing [P]etitioner's present dangerousness." *Ramos*, 293 F. Supp. 3d at 1034-35; *see also Obregon*, 2017 WL 1407889, at *7.

Additionally, the Court finds that the IJ erred when he failed to consider alternatives to detention. In *Ramos*, the district court faulted the IJ for not "adequately consider[ing] whether alternatives to detention could protect the community from any continued dangerousness [the petitioner] might pose." 293 F. Supp. 3d at 1037. Specifically, the district court noted that the petitioner was complying with the conditions of her probation, and that "[i]n light of this evidence, there are many alternatives to detention that might have been sufficient to protect the community from whatever danger [she] posed," such as "mandatory alcohol education and counseling programs[, ] an ignition interlock device, ankle monitors, and mandatory check ins . . . ." *Id.*; *see also Obregon*, 2017 WL 1407889, at *7 ("little attention was given to petitioner's plan for out-patient treatment and other measures to justify that the least restrictive alternative was not further incarceration"). Like in *Ramos*, the IJ here did not adequately consider alternatives to detention. While the IJ noted the problematic nature of the voluntary rehabilitation program Petitioner was proposing, the IJ did not address Petitioner's acceptance into the SCRAM program or consider the efficacy of a mandatory counseling and rehabilitation program, check ins, or other monitoring programs.

In light of these errors, the Court finds it prudent to remand the case back to the IJ to make a new dangerousness determination. The IJ must consider whether the Government satisfied its dangerousness determination when Petitioner was not, in fact, arrested multiple times for burglary or DUI. The IJ should also distinguish between the arrests and convictions, and explain why the arrests demonstrate dangerousness. The IJ must also address each of Petitioner's proposed

9

alternatives, and how that affects the dangerousness determination.

In so remanding, the Court expresses some skepticism that the Government can meet its burden based on the burglary and DUI convictions, as well as the arrests.[6]

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's TRO motion. The Court ORDERS that Petitioner be given a bond hearing by **February 7, 2020**, which shall comply with this order.

IT IS SO ORDERED.

Dated: January 21, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[6] At the December 2019 court hearing, Petitioner stated that he testified in the August 2018 hearing as to the circumstances of his arrests. In reviewing the audio of the August 2018 hearing, it appears Petitioner testified as to his burglary and DUI convictions only. Petitioner did testify as to some of his arrests during the October 2019 hearing, although his testimony was focused on whether he had appeared for prior criminal hearings. The Court notes, however, that Petitioner's description of the other arrests at the December 2019 hearing suggests low culpability and/or dangerousness.

10